**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                 :
GENO A. LOCASCIO,                :
                                 :   Civil Action No. 07-4834 (RBK)
          Plaintiff,             :
                                 :
     v.                          :        **O P I N I O N**
                                 :
KAREN BALICKI, et al.,           :
                                 :
          Defendants.            :
_____:

**APPEARANCES:**

Geno A. Locascio, Plaintiff, <u>Pro</u> <u>Se</u>
# 150156-C/540701
Northern State Prison
P.O. Box 2300
Newark, NJ 07114

Daniel Michael Vannella, Esq.
N.J. Division of Law
R.J. Hughes Justice Complex
25 Market Street
Trenton, NJ 08625
Attorney for Defendants

**KUGLER, District Judge**

     This matter comes before the Court upon Defendants' Motion

to Seal (docket entry 96) and Motion for Judgment on the

Pleadings pursuant to Fed. R. Civ. P. 12(c), or in the

alternative, for Summary Judgment (docket entry 99).  Plaintiff

has opposed neither motion.  The Court has reviewed the motions

and decided them without oral argument pursuant to Federal Rule

of Civil Procedure 78.

For the reasons that follow, the Court will grant Defendants' motions.  A motion to dismiss for failure to answer interrogatories, filed by Defendants on December 9, 2010 (docket entry 111), is also pending in this case.  Due to this Court's decision to grant summary judgment, the motion to dismiss will be dismissed as moot.

## BACKGROUND

Plaintiff's complaint was submitted on October 1, 2007.  At the time he submitted his original complaint, Plaintiff was housed at the New Jersey State Prison ("NJSP"); however, his complaint concerned events that occurred while previously housed at the South Woods State Prison ("SWSP"), beginning on January 9, 2007.

In his complaint, Plaintiff asserted that within five minutes of entering the prison tier to which he was assigned, an officer asked him in front of other inmates if it was true that he was a "skinhead with a rape charge."  Plaintiff said that it was not true, and the officer stated that his paperwork must be incorrect.

Plaintiff was then subjected to daily cell searches by defendants, where his property was damaged, and religious, legal, and educational materials were destroyed or missing.  His cell was constantly moved, and he was placed in cells with gang members.  The defendant officers would tell the gang members that

Plaintiff was a skinhead and a rapist.  He was moved and searched for over four months.  At one point, he was locked up for 15 days for not securing his cell door, and defendant Jones gave away Plaintiff's television to another prisoner.

Plaintiff asserted that he constantly complained and sent grievance forms to defendant Balicki, and his grievances went unanswered.  This added to the ire of the officers who threatened him, warning him not to file anymore complaints.  Plaintiff alleges that Defendant Jones told plaintiff that he would "knock his head off" if Plaintiff ever made another complaint about him. Inmates told Plaintiff that defendants Delea and Jones were telling other inmates to attack him.  Plaintiff was called a "snitch." Plaintiff contends that Defendant Chomo "constantly" called Plaintiff a racist rapist in front of other inmates instead of calling him by his name.  Defendants destroyed his mail, literature, and called him names in front of other prisoners in attempts to have the other prisoners hurt Plaintiff.

Plaintiff stated that he lived in constant fear, and was reluctant to continue filing grievances because he would be retaliated against.

Finally, on August 7, 2007, Plaintiff had an "oral confrontation" with Defendant Carney, pertaining to the continued harassment.  Plaintiff was told to leave his cell, and after five minutes, was attacked by several officers.  His face was driven

into a wall and he was beaten "vigorously" with closed fists,
knees, elbows and feet.  Plaintiff could not yell because he had
no breath in his lungs, and states that he was being
"brutalized."  Plaintiff was taken to a room and shackled, and
doors were opened onto his face.  He was beaten while cuffed and
shackled, and "thought he was being murdered."

That night, Plaintiff was transferred to New Jersey State
Prison, where he spent 6 days in the infirmary.  He was housed in
lock-up for over 40 days with no access to the law library, and
no proper medical treatment for his injuries.

Plaintiff's complaint asked for monetary relief, injunctive
relief, and counsel.

Defendants' motion to vacate default was granted on March
23, 2009, and their proposed answer to the complaint was filed
that day.  Plaintiff repeatedly asked for, and has been denied,
appointment of counsel.  Scheduling orders have been entered, and
discovery has been sought by both parties.  Plaintiff filed an
amended complaint on September 7, 2010; however, that complaint
has been stricken in its entirety by Order dated May 27, 2011.

On October 27, 2010, Plaintiff was ordered to serve answers
and objections to Defendants' interrogatories.  It does not
appear that Plaintiff has done so.  Thereafter, on December 9,
2010, Defendants filed a motion to dismiss for failure to submit
interrogatory answers.

## DISCUSSION

**A.   Defendants' Motion for Judgment on the Pleadings, or alternatively, for Summary Judgment**

Defendants assert that Plaintiff's complaint must be dismissed, because he has failed to exhaust his administrative remedies with regard to the claims in the complaint; that defendant Balicki is entitled to summary judgment as to all claims raised against her based on her official capacity, individual capacity, and lack of personal involvement; that the remaining defendants are entitled to summary judgment on the excessive force claims, failure to protect claims, verbal harassment and destruction of property claims, and state law tort claims.  Defendants further argue that Plaintiff is not entitled to compensatory damages because he has not suffered physical injury.

Plaintiff has not opposed the motion.

**B.   Standard of Review for Defendants' Motion for Judgment on the Pleadings, or alternatively, for Summary Judgment**

1.   Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 12(c); DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d Cir.

2008).  The standard governing a Rule 12(c) motion is the same as
the one governing motions to dismiss under Rule 12(b)(6).  See
Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  The
Court must accept the nonmoving party's well-pleaded factual
allegations as true and construe those allegations in the light
most favorable to the nonmoving party, but the Court will
disregard any unsupported conclusory statements.  See DiCarlo, at
262-63.

    2.  Summary Judgment

    A party seeking summary judgment must "show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d
Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219,
n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v.
Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986).  The
threshold inquiry is whether "there are any genuine factual
issues that properly can be resolved only by a finder of fact
because they may reasonably be resolved in favor of either
party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250
(1986)(noting that no issue for trial exists unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict in its favor).  In deciding whether triable

issues of fact exist, the Court must view the underlying facts

and draw all reasonable inferences in favor of the non-moving

party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63

F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811

F.2d 225, 231 (3d Cir. 1987).

    Rule 56(e) of the Federal Rules of Civil Procedure provides,

in relevant part:

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse party
> may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against
> the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a

party's ultimate burden of proof on a claim.  Rather, "the

determination of whether a given factual dispute requires

submission to a jury must be guided by the substantive

evidentiary standards that apply to the case."  Anderson, 477

U.S. at 255.

    Under the Rule, a movant must be awarded summary judgment on

all properly supported issues identified in its motion, except

those for which the nonmoving party has provided evidence to show

that a question of material fact remains.  See Celotex, 477 U.S.

at 324.   Put another way, once the moving party has properly

supported its showing of no triable issue of fact and of an

entitlement to judgment as a matter of law, for example, with

affidavits, which may be "supplemented . . . by depositions,

answers to interrogatories, or further affidavits," id. at 322

n.3, "its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts."   Matsushita,

475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S.

at 247-48 (stating that "[b]y its very terms, this standard

provides that the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact.").

      What the nonmoving party must do is "go beyond the

pleadings and by [its] own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for

trial.'"   Celotex, 477 U.S. at 324; see also Lujan v. National

Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he

object of [Rule 56(e)] is not to replace conclusory allegations

of the complaint . . . with conclusory allegations of an

affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v.

BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert.

denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine

issue of material fact, . . . the opponent need not match, item

for item, each piece of evidence proffered by the movant," but

must "exceed[] the 'mere scintilla' threshold and . . . offer[] a

genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil

Procedure and provide that "each side shall furnish a statement

which sets forth material facts as to which there exists or does

not exist a genuine issue."  L. Civ. R. 56.1.  "Where possible, a

single joint Rule 56.1 statement is favored."  Allyn Z. Lite, New

Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted).

"Where a joint statement is not prepared, then, under the rule,

'facts submitted in the statement of material facts which remain

uncontested by the opposing party are deemed admitted.'" <u>Id.</u> at

193 (citations omitted).  However, "the parties' statements

pursuant to Local Rule 56.1 "cannot bind the Court if other

evidence establishes that the stipulated facts are in error."

<u>Id.</u> (citation omitted).

**C.   <u>Plaintiff has Failed to Exhaust Administrative Remedies</u>**

  1.   <u>Exhaustion Requirement</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"),

codified as 42 U.S.C. § 1997e, prisoners are precluded from

contesting prison conditions in federal court until exhausting

"all avenues of relief available to them within their prison's

inmate grievance system."  <u>Spruill v. Gillis</u>, 372 F.3d 218, 227

(3d Cir. 2004) (holding that the failure to "properly" exhaust administrative remedies under the PLRA constitutes a procedural default).  Specifically, section 803(d) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The purpose of the exhaustion requirement is "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." Spruill, 372 F.3d at 230.  With this requirement, Congress intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Id. at 227.

A plaintiff must pursue to completion all available administrative remedies, even if they are not "plain, speedy, and effective," do "not meet federal standards," or could not result in the relief requested in the suit.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  The prisoner must "carry the grievance through any available appeals process" before the remedies will be deemed exhausted.  Camino v. Scott, No. 05-4201, 2006 WL 1644707, *4

(D.N.J. June 7, 2006) (citing Spruill, 372 F.3d at 232).  Summary judgment of an inmate's claim is proper where he has failed to exhaust administrative remedies.  See Fortune v. Bitner, No. 07-3385, 2008 WL 2766156, *3 (3d Cir. July 17, 2008).

    2.    New Jersey Department Of Corrections Grievance System

Plaintiff was incarcerated at SWSP from January 9, 2007 through August 7, 2007.  The Department requires all correctional institutions to provide inmates with a departmentally-approved procedure for resolving complaints.  See N.J.A.C. § 10A:8-1.1 to -3.6.  Pursuant to the New Jersey Administrative Code § 10A:8-1.1 to -3.6, SWSP developed and issued an Inmate Handbook, which established an inmate administrative grievance procedure. See Declaration of Donna Tymkow ("Tymkow Decl." ¶ 2, Ex. A), attached to Defendants' Motion.  The administrative grievance procedure provided inmates with a mechanism they could use to bring grievances to the attention of correctional facility staff for resolution.  (Tymkow Decl., ¶¶ 2-4).  The inmate population at SWSP learned the procedures for filing an administrative grievance through the Inmate Handbook. (Tymkow Decl., ¶¶ 2-4).

Prior to seeking judicial relief, inmates are required to use the Inmate Remedy System.  To commence a grievance using the Inmate Remedy System, an inmate must complete the Inmate Remedy System Form and deposit the form into a collection box. (Tymkow Decl., ¶ 7).  Inmates who are unable to access the box are

assigned a social worker who will do so.  (Tymkow Decl. ¶ 8).

After the forms are submitted, the Inmate Remedy System Form

Coordinator distributes them to the appropriate department

supervisor for investigation.  (Tymkow Decl., ¶ 9).  The

department head investigates the report and issues a response.

(Tymkow Decl. ¶ 10).  An inmate may appeal the response by

utilizing the Administrative Appeal Process.  (Tymkow Decl. ¶

11).  The Administrator renders appeals decisions.  (Tymkow Decl.

¶ 12).  An inmate who receives a response to his administrative

appeal has exhausted his administrative remedies.  (Tymkow Decl.

¶ 13).

    3.    <u>Plaintiff Did Not Exhaust.</u>

    Here, Defendants assert that Plaintiff failed to exhaust his

administrative remedies.  As evidence of this, they submit the

Declaration of Brenda A. Hutton ("Hutton Decl.").  Ms. Hutton is

employed by the New Jersey Department of Corrections as an

Executive Assistant at the New Jersey State Prison ("NJSP").  Ms.

Hutton declares that she conducted a search to locate "any and

all remedy forms" submitted by Plaintiff at NJSP (Hutton Decl., ¶

14).  They further submit the Declaration of Donna Tymkow

("Tymkow Decl."), a Program Development Specialist at South Woods

State Prison ("SWSP"), who searched all inmate remedy forms

submitted by Plaintiff while housed at SWSP (Tymkow Decl., ¶ 15).

Defendants' submission of the Declaration of Robert Laforgia

("Laforgia Decl."), an Assistant Superintendent at East Jersey State Prison ("EJSP"), includes excerpts of the inmate classification file and the medical file for Plaintiff during the time he was at EJSP.

A review of the record presented demonstrates that Plaintiff filed seven Inmate Request Forms ("IRFs") to SWSP staff during the seven months he was incarcerated there.  Of the seven IRFs submitted, two were most closely related to the facts of his complaint.  In his February 21, 2007 IRF, Plaintiff complained that he was not compatible with his cellmate.  He was given a cell transfer.  In the April 16, 2007 IRF, Plaintiff complained that Officer Jones took his television when he went into lock up, but that it was returned to him.  He was also told that he would receive no mail.  He requested an interview.  Plaintiff's request was granted, and Plaintiff told officers that he did not like "being in a cell with black inmates."  The officer concluded that Plaintiff's complaints were attempts to force another cell change.  (Tymkow Decl., Exhibit C, IRFs at SWSP).

Defendants assert, and this Court agrees, that none of these IRFs complain of the specific issues set forth in the complaint. Additionally, Plaintiff did not appeal any of the IRF staff responses to the prison administrator, as required by N.J.A.C. 10A:1-4.4(c), (d); N.J.A.C. 10A:1-4.6(d).  Nor has Plaintiff

filed opposition to this motion, or produced any discovery in this matter that would provide evidence to the contrary.

Therefore, because Plaintiff failed to comply with the exhaustion requirement under the PLRA, and because there is no basis for excusing Plaintiff's failure, the Court finds that all Defendants are entitled to summary judgment on Plaintiff's § 1983 claims.

**D.    Motion to Seal**

On September 9, 2010, Defendants filed a Motion to Seal certain medical exhibits (docket entry 96).  Defendants filed medical information to defend Plaintiff's action concerning his excessive force claims, and because they had to reference the medical records of treatment provided to Plaintiff during his incarceration.  (Motion to Seal, Declaration of Daniel M. Vannella, ¶¶ 4-7).

A motion to seal is governed by Local Civil Rule 5.3(c), which provides in pertinent part that a request to seal must be presented by motion.  The motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."

L. Civ. R. 5.3(c)(2).  Local Rule 5.3 also provides that any order or opinion on any motion to seal "shall include findings on the factors set forth in (c)(2) ... as well as other findings required by law ...."  L. Civ. R. 5.3(c)(5).

It is well-established that there is a "common law public right of access to judicial proceedings and records."  In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001).  This is consistent with well-established precedent, based on First Amendment considerations and the common law right of access to judicial records, that documents filed with the court and judicial proceedings are open to the public.  See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).  In order to overcome this presumption of a public right of access, the movant must demonstrate that "good cause" exists for the protection of the material at issue.  See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994).  Good cause exists when a party makes a particularized showing that disclosure will cause a "'clearly defined and serious injury to the party seeking closure.'"  Pansy, 23 F.3d at 786 (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)).  The claimed injury must be specifically stated because "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing."  Id. at 786 (quoting

Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

With the present motion, Defendants assert that the information contained within the medical records should be kept from public dissemination to protect Plaintiff's right to privacy in his medical information, and that there is no less restrictive means available other than the relief sought by defendants, namely, to seal.  This Court agrees that medical information concerning Plaintiff must be kept private, and that sealing is the only means to do so in this action.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001)(right to privacy in one's medical records is clearly recognized); United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980)(finding: "There is no question that medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").  Therefore, the motion to seal will be granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment
on the Pleadings, or Alternatively, for Summary Judgment is
granted.  Defendants' Motion to Seal is also granted.
Defendants' Motion to Dismiss is dismissed as moot.

An appropriate Order follows.


s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge


Dated: June 22, 2011